1

2

3

4              UNITED STATES DISTRICT COURT

5             NORTHERN DISTRICT OF CALIFORNIA

6

7    BOLLEGRAAF PATENTS AND BRANDS          Case No.  22-cv-01687-HSG
     B.V., et al.,
8                                           **CLAIM CONSTRUCTION ORDER**
                  Plaintiffs,
9                                           Re: Dkt. No. 38
            v.
10
     POLYMERIC TECHNOLOGY, INC., A
11   CALIFORNIA CORPORATION.,

12               Defendant.

13   **I.     SUMMARY**

14          This case concerns a patent directed to recycling technology.  Plaintiff Bollegraaf Patents

15   and Brands B.V. ("Bollegraaf") filed this action against defendant Polymeric Technology, Inc.

16   ("Polymeric") on March 16, 2022, asserting, among others, claims for patent and trademark

17   infringement.  *See* Dkt. No. 1, "Compl."  Bollegraaf asserts just one patent—U.S. Patent No. 10,

18   259,011 ("'011"). Now before the Court is the parties' lone claim construction dispute.

19           The '011 patent is titled "Disc for a Separating Conveyor Screen and Separating

20   Conveyor Screen Including Such a Disc."  The patent is directed to "a separating conveyor system

21   [] composed of two separating conveyor screens[.]"  '011 Patent at 3:15-16.  The screens are

22   arranged in series.  *Id*. at 3:17.  The parties dispute only one term, which appears in twelve claims

23   of the only asserted patent.  Plaintiff Bollegraaf advocates for the "plain and ordinary meaning" of

24   the term, while defendant Polymeric proposes a limiting definition.

25          For the reasons set forth below, after carefully reviewing the parties' arguments and the

26   evidence submitted,[1] the Court **ADOPTS** the plain and ordinary meaning of the term "anchoring

27   _____

28   [1] This Order follows claim construction briefing and a claim construction hearing, held on January
     20, 2023.  *See* Dkt. Nos. 39 ("Op. Br."), 40 ("Resp. Br."), 41 ("Reply").

*United States District Court*
*Northern District of California*

1   member."

2   **II.    LEGAL STANDARD**

3        Claim construction is a question of law to be determined by the Court.  *Markman v.*

4   *Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).  "The purpose of claim construction is to

5   determine the meaning and scope of the patent claims asserted to be infringed."  *O2 Micro Int'l*

6   *Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quotation omitted).

7   Generally, claim terms should be "given their ordinary and customary meaning"—in other words,

8   "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the

9   time of the invention."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc)

10  (quotation omitted).  There are only two circumstances where a claim is not entitled to its plain

11  and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer,

12  or 2) when the patentee disavows the full scope of a claim term either in the specification or

13  during prosecution."  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir.

14  2012) (internal citation omitted).

15       When construing claim terms, the Federal Circuit emphasizes the importance of intrinsic

16  evidence such as the language of the claims themselves, the specification, and the prosecution

17  history.  *Phillips*, 415 F.3d at 1312–17.  The claim language can "provide substantial guidance as

18  to the meaning of particular claim terms," both through the context in which the claim terms are

19  used and through comparison with other claims in the patent.  *Id*. at 1314.  The specification is

20  likewise a crucial source of information.  *Id*. at 1315–17.  Although it is improper to read

21  limitations from the specification into the claims, the specification is "the single best guide to the

22  meaning of a disputed term" and "usually dispositive."  *Id*. at 1315; *see also Merck & Co. v. Teva*

23  *Pharm. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) (explaining that "claims must be

24  construed so as to be consistent with the specification") (internal citations omitted).  The

25  prosecution history, while often lacking the "clarity" of the specification, also constitutes intrinsic

26  evidence that provides "evidence of how the PTO and the inventor understood the patent."

27  *Phillips*, 415 F.3d at 1317 (internal citation omitted).

28       Despite the importance of intrinsic evidence, courts may also consider extrinsic evidence—

United States District Court
Northern District of California

2

technical dictionaries, learned treatises, expert and inventor testimony, and the like—to help construe the claims. *Id.* at 1317–18. For example, dictionaries may reveal what the ordinary and customary meaning of a term would have been to a person of ordinary skill in the art at the time of the invention. *Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.*, 744 F.3d 715, 722 (Fed. Cir. 2014) ("Terms generally carry their ordinary and customary meaning in the relevant field at the relevant time, as shown by reliable sources such as dictionaries, but they always must be understood in the context of the whole document—in particular, the specification (along with the prosecution history, if pertinent).") (internal citations omitted). Expert testimony can also help "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. Extrinsic evidence is, however, "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (quotation omitted).

## III.   ANALYSIS

### 1.   "anchoring member"

| Bollegraaf's Proposed Construction | Polymeric's Proposed Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | **"a member for anchoring that does not project axially beyond the adjacent disc body"** | Plain and ordinary meaning |

The Court agrees with Bollegraaf's construction. The term "anchoring member" appears in claims 1-3 and 6-14 of the '011 Patent. Neither party introduces any expert support for its proposed construction. In the absence of clear disavowal or redefinition, "claim terms must be given their plain and ordinary meaning[.]" *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) (internal citation omitted). Defendants do not argue that the patentee acted as its own lexicographer here, and as Defendants note, "disavowal must be clear," even if it does not need to be "explicit." *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 907 (Fed. Cir. 2019) (internal citation omitted).

United States District Court
Northern District of California

Polymeric largely hinges its argument on a passage in the specification in which the patentee states "On the other hand, the anchoring member 31 does not project axially from the disc body so that it does not interfere with the separating function." '011 Patent at 6:52-29.  Polymeric argues that the invention either would not work at all or would not work as intended if the anchoring member extended axially beyond the disc body, because it would interfere with the sorting process.  But while the cited passage might bolster Polymeric's construction in isolation, the specification overall (including the preceding and following paragraphs) supports Bollegraaf's argument that the embodiment described is exemplary.  *See* '011 Patent at 6:60 ("If, as in the present example, . . ."); 6:40-42 ("*Preferably*, the anchoring member 31 and the tensioning member 37 are of metal material and the disc body is of polymer material.") (emphasis added).  The Court thus agrees with Bollegraaf that it is improper to read limitations from the specification into the claim, as Polymeric urges.  *See Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000) (explaining that "although the specification may well indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than such embodiments") (citation omitted); *Superguide Corp. v. DirecTV Enters., Inc.* 358 F.3d 870, 875 (Fed. Cir. 2004) (confirming that "a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment").

Polymeric's comparison to *Wang Labs., Inc. v. America Online, Inc.* is inapposite because the patentee there had implicitly distinguished its claimed invention by describing the alternative in the "Background of the Invention" section of the specification.  *See* 197 F.3d 1377, 1382 (Fed. Cir. 1999) (limiting a videotex processing patent to its character-based protocol where that was the only embodiment disclosed in the specification).  And this case is also unlike *Irdeto Access, Inc. v. Echostar Satellite Corp.* because Polymeric makes no prosecution history arguments here.  *See* 383 F.3d 1295, 1299 (Fed. Cir. 2004) (limiting the term "group" to a subset of subscribers to satellite television services because the patentee had represented to the PTO that "key" modifiers to the term were adequately described in the specification, and the term was so used throughout the specification).  In short, the Court finds that this case does not involve a case of clear

4

1  disavowal of claim scope.

2       Finally, the Court agrees with Plaintiff's argument that dependent claim 10 limits the width

3  of the anchoring member to being equal to that of the disc body, so it follows that the scope of

4  independent claim 1 is broader.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005)

5  ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption

6  that the limitation in question is not present in the independent claim") (internal citation omitted).

7  **IV.    CONCLUSION**

8       For the foregoing reasons, the Court **ADOPTS** the plain and ordinary construction of the

9  term "anchoring member."  The Court **SETS** a further case management conference for May 9,

10  2023 at 2:00 p.m.  All counsel shall use the following dial-in information to access the call:

11       Dial-In: 888-808-6929;

12       Passcode: 6064255

13       For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where

14  at all possible, parties shall use landlines.  The parties shall file a joint case management statement

15  proposing a schedule for the remainder of the case by May 2, 2023.  **NOTE REGARDING**

16  **TELEPHONIC CASE MANAGEMENT CONFERENCES**:  All attorneys and pro se litigants

17  appearing for a telephonic case management conference are required to dial in at least 15 minutes

18  before the hearing to check in with the CRD.

19       **IT IS SO ORDERED.**

20  Dated:  4/11/2023

22  HAYWOOD S. GILLIAM, JR.
23  United States District Judge

5